# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO.: 1:16-CR-5-TLS |
| | ) | |
| CHRISTOPHER FRIES | ) | |

## OPINION AND ORDER

The Defendant, Christopher Fries, pled guilty to possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). The probation officer drafted a Presentence Investigation Report (PSIR) in preparation for sentencing. This Opinion and Order resolves the Defendant's objections to the PSIR.

## THE PRESENTENCE INVESTIGATION REPORT

The Defendant is a convicted felon. (PSIR ¶ 12.) A confidential informant (CI) advised ATF agents that the Defendant was selling firearms, prescription pills, and marijuana. (*Id.* ¶ 11.) Controlled buys between the CI and the Defendant were conducted on four occasions in 2015: September 22, October 8, October 23, and November 24. (*Id.* ¶¶ 13–23.) A fifth controlled buy took place on January 16, 2016. (*Id.* ¶¶ 24–25.) The CI purchased one firearm on each of the five occasions, these being a Savage Shotgun with an overall length of less than 26 inches and a barrel length of less than 18 inches, an FIE pistol, Canik pistol, SB Firearm LLC (Schroeder Bauman) pistol, and a Glock pistol, which had been reported stolen. For Guideline calculation purposes, the probation officer noted that the Defendant possessed at least three additional firearms, for a total of at least eight firearms. (*Id.* ¶ 28.) The following excerpt from the PSIR contains the factual support for the additional firearms:

> On October 8, 2015, the defendant is observed wearing a pistol on his person. He showed the CI this pistol while conducting the sale of the PIE .380 pistol, and the CI noted it was a Springfield .45 caliber pistol with an extended magazine. On January 19, 2016, the defendant advised the CI that he sold this Springfield .45 caliber pistol to another individual. On January 14, 2016, the defendant, in a recorded telephone conversation with the CI, discussed his possession of a firearm with a selector switch. The defendant described that the selector switch cost over $1,500.00 and that he has put over $5,000.00 into the firearm. On January 19, 2016, the defendant told the CI that he had a SKS/AK rifle with a shotgun stock. On October 23, 2015, the defendant stated to the CI that he had over 250 firearms in his basement.

(*Id.*)

The PSIR relied on § 2K2.1 of the United States Sentencing Guidelines to set the base offense level at 20 for the Defendant's violation of 26 U.S.C. § 5861(d). Four separate enhancements were applied to raise the total offense level to 30. The probation officer added 4 levels because the offense involve between 8 and 24 firearms. (PSIR ¶ 38 (citing U.S.S.G. § 2K2.1(b)(1)(B) (requiring a 4-level increase for between 8 and 24 firearms).) Because one of the firearms was stolen, § 2K2.1(b)(4)(A) required a 2-level increase in the base offense level. (PSIR ¶ 30 (noting that "the Glock model 21 pistol sold on January 19, 2016, was reported stolen on June 24, 2015"; ¶ 39 (adding 2 levels).) Finally, the PSIR included a 4-level enhancement to the base offense level on grounds that the Defendant possessed the firearm in connection with another felony. *See* U.S.S.G. § 2K2.1(b)(6)(B) (providing for increase in base offense level if the defendant used or possessed any firearm "in connection with another felony offense"). The probation officer's basis for applying this enhancement is set forth in paragraph 30, and cites the 10 morphine pills that the Defendant sold to the CI during the October 8, 2015, controlled buy. (PSIR ¶ 30 ("The [D]efendant was wearing a .45 caliber pistol on his person during the transaction, and he also showed the CI this pistol.").)

2

After taking into account the Defendant's acceptance of responsibility adjustment, the total offense level is 27. This offense level, when combined with the Defendant's criminal history category of I, yields a Guideline range of 70 to 87 months of imprisonment. The Defendant objects to each of the enhancements, and argues that his total offense level should be 19. The Guideline range would then be 30 to 37 months of imprisonment.

**ANALYSIS**

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (citing *Nelson*, and setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence). This Opinion and Order is intended to resolve the issues related to the first step, calculation of the Guidelines range.

Facts relevant to sentencing should be proved by a preponderance of the evidence. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *see also United States v. Krieger*, 628 F.3d 857, 862 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). The Federal Rules of Evidence do not apply to sentencing, *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005), and a court may rely on hearsay as long as the information "has sufficient

indicia of reliability to support its probable accuracy," *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008) (citation and quotation marks omitted); *see also United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) ("Sentencing judges necessarily have 'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,' but 'due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations.'") (quoting *England*, 555 F.3d at 622). As such, "[a] district court may rely on facts asserted in the PSR if the PSR is based on sufficiently reliable information." *Rollins*, 544 F.3d at 838. "The defendant bears the burden of proving that the PSR is inaccurate or unreliable," and if he offers no evidence to question the PSR's accuracy, the court may rely on it. *Id.* However, it is the Government's burden to prove by a preponderance of the evidence that an enhancement applies. *United States v. Hines*, 449 F.3d 808, 815 (7th Cir. 2006); *United States v. Foutris*, 966 F.2d 1158, 1160 (7th Cir. 1992).

### A.     Section 2K2.1(b)(1) Enhancement for Number of Firearms Involved

As mentioned above, the PSIR includes a two-level enhancement based on the probation officer's finding that more than eight firearms were involved. The Defendant objects to any inclusion in the PSIR of firearms that were not named in the Indictment. Specifically, he objects to any mention of the .45 caliber pistol (Springfield) detailed in paragraph 18, and also discussed in paragraphs 25 and 28, and to discussion of Controlled Buy #4, as described in paragraphs 21–23. He asserts that only four firearms were delineated by way of indictment and maintains that even if the Springfield that the CI observed and the firearm from Controlled Buy #4 are considered, the total number of firearms is still only six.

Pursuant to U.S.S.G § 1B1.3, the base offense level and specific offense characteristics shall be determined on the basis of "all acts and omissions, committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "that occurred during the commission of the offense of conviction." For offenses that would have been grouped together, like those here, the court is to consider the acts or omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). For purposes of calculating the number if firearms under § 2K2.1(b)(1), "only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed" are to be counted. U.S.S.G. § 2K2.1, cmt. 5.

The Court has no trouble concluding that all of the firearms the Defendant possessed were illegally possessed. As the Government notes, the Defendant was prohibited from possessing any firearms by virtue of his prior felony conviction. Additionally, the Court finds that all of the weapons were possessed as part of the same course of conduct. "Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." § 2K2.1, cmt. 5(B)(ii)). These factors support a finding that all the firearms the Defendant possessed during the time the controlled buys were conducted—September 2015 through January 2016—should be considered relevant conduct.

Finally, the Court finds that there is sufficiently reliable evidence to conclude that the number of firearms the Defendant illegally possessed was at least eight. He sold five firearms to the Defendant. During one of these purchases, the CI observed a Springfield .45 caliber pistol on

5

the Defendant's person. (PSIR ¶ 18.) This same weapon was sitting on the counter during a separate transaction. (*Id.* ¶ 20.) The Defendant had also referenced this firearm in a recorded telephone conversation with the CI. (*Id.* ¶ 16.) During monitored calls and text messages on January 12, 2016, the CI inquired about buying a firearm with a selector switch, but the Defendant declined on the basis that he had $5,000 in that firearm. On January 16, 2016, when the CI was at the Defendant's residence to buy the Glock, the Defendant stated that he had an AK-47 rifle with a shotgun stock. He also stated that some of the firearms he had were from his grandfather. (*Id.* ¶ 25.)

The five guns the Defendant sold to the CI, plus the Springfield the CI observed and the Defendant referenced, plus the other two firearms the Defendant specifically talked about equals eight firearms. It is not necessary to rely on the Defendant's statement to the CI that he had over 250 firearms in the basement to conclude that the enhancement for between 8 and 24 firearms applies to the Defendant's conduct. Accordingly, the Court overrules the Defendant's objection and adopts the position of the Government and the probation officer as it relates to the number of firearms the Defendant unlawfully possessed.

B.  Section 2K2.1(b)(4)(A) Enhancement for Stolen Firearm

The Defendant objects to the implication that he knew that the Glock model 21 pistol that he sold to the CI on January 19, 2016, was stolen.

The PSIR does not allege that the Defendant was aware that the Glock was stolen, or even imply the same. It simply states that the probation officer was going to "consider the fact that the Glock model 21 pistol sold on January 19, 2016, was reported stolen on June 24, 2015."

(PSIR ¶ 30.) Section 2K2.1(b)(4)(A) does not have a scienter requirement. *See* U.S.S.G. § 2K2.1, cmt. 8(B) ("Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen."). The Defendant has not challenged the accuracy of the statement that the gun was reported stolen, and that status was sufficient for the enhancement to apply. Accordingly, the Court overrules the Defendant's objection and adopts the position of the Government and the probation officer as set forth in the Addendum to the PSIR.

C.  **Section 2K2.1(b)(6)(B) Enhancement for Possession in Connection with Another Felony**

As relevant here, U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The Guidelines commentary explains that "in connection with" means the enhancement applies if the firearm facilitated, or had the potential of facilitating, another felony offense. U.S.S.G. §2K2.1, cmt. 4. "Another felony offense" is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* n.14(C). Application Note 14(B) states that when the other offense is a drug offense, the application is warranted if a "firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . . because the presence of the firearm has the potential of facilitating another felony offense."

However, the enhancement must be "related to the offense of conviction." *United States v. Seals*, 813 F.3d 1038, 1045 (7th Cir. 2016). In other words, the firearm "must be part of the

same course of conduct or common scheme or plan' as the offense of conviction." *Id.* (first citing U.S.S.G. § 2K2.1, cmt. 14(E)(ii); then citing *id.* § 1B1.3(a)(2)); *see also United States v. Clinton*, 825 F.3d 809, 811 (7th Cir. 2016) (stating that, to avoid application of § 2K2.1(b)(6) to "offenses that may be only tenuously connected to the offense of conviction . . . the other offense must fall within relevant conduct in order for the enhancement to apply").

Although it is a close call, the Court finds that the Defendant did not possess the firearm in connection with his drug dealing activities. In making this finding, the Court acknowledges the reasonable inference that guns often protect and embolden a drug dealer's activities. *See Clinton*, 825 F.3d at 812 (stating that application note 14 "reflects the axiom that guns are indeed a routine part of the drug trade and facilitate that trade by providing protection from the theft of drugs or the cash proceeds of drug sales, as well as a deterrent to those who would compete in that drug trade"). However, there is little evidence in the record to suggest that the Defendant needed protection for his drug activity, or that it was of such a large scale that the need for such protection can be presumed. Between September 2015 and January 2016, the Defendant sold ten morphine pills to the CI on one occasion. During other conversations and transactions, the Defendant was not able to obtain the drugs the CI wanted, or he asked the CI to find drugs for the Defendant. Also absent from the record is any evidence regarding the type of customers the Defendant would sell drugs to, if indeed other people even purchased drugs from him. Thus, there is nothing that the Court could rely upon to find that the Defendant considered his drug customers to present a threat of theft or other harm that might require the protection or deterrence that a firearm can provide.

From all of the information provided in the PSIR, the Court finds that it is more likely

that the Defendant, when he was at his rural home, nearly always carried a gun or had one in close proximity, regardless of his activities. The Defendant and the CI had a long standing relationship in which they traded "merchandise, prescription pills (Adderall) as well as firearms." (PSIR ¶ 11.) That the CI observed the Defendant with a firearm on a particular day, and the Defendant showed the firearm to the CI, does not suggest that this was done to facilitate the sale of the morphine pills, as opposed to being a coincidence based on the Defendant's general affinity for firearms. Nothing about that transaction, or any of the other evidence regarding the Defendant's drug dealing, carries the markings of a "tool of the trade" conclusion. Accordingly, the Government has not established, by a preponderance of the evidence, that the firearm was possessed "in connection with" another felony.

The Court sustains the Defendant's objection to the § 2K2.1(b)(6)(B) four-level enhancement. Paragraphs 30 and 40 of the PSIR will be revised accordingly.

## CONCLUSION

Based on the Court's findings as set forth above, the Defendant total offense level is 23. Combined with his criminal history category of I, the Defendant's advisory Guideline range is 46 to 57 months of imprisonment. The PSIR will be revised accordingly. At the sentencing hearing, the Court will determine what sentence is appropriate for the Defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a).

SO ORDERED on May 16, 2017.

       s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT